IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LANDON WILLIAMS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-43-WKW-PWG |
| | ) | |
| J. KEITH MCCRAY; | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

| | | |
|---|---|---|
| LANDON WILLIAMS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-476-WKW-PWG |
| | ) | |
| DAVID M. WARREN, | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

On January 21, 2015, Plaintiff Landon Williams filed his first lawsuit against J. Keith McCray, Felton J. Johnson, and James F. Scroggins (Civil Action No. 3:15-cv-43-WKW-PWG ("Lead Case")) seeking redress for injuries sustained in connection with his arrest and subsequent detention occurring on July 4, 2013. Plaintiff generally alleges that Defendant McCray illegally arrested and detained him,

that Defendant McCray used constitutionally excessive force during the arrest and detention, and that Defendants Johnson and Scroggins failed to intervene and protect him from the excessive use of force.

On July 6, 2015, Plaintiff filed his second lawsuit against David M. Warren, the former Sheriff of Macon County, Alabama, (Civil Action No. 3:15-cv-476-WKW-PWG ("Second Case")) seeking further redress for injuries suffered in connection with the same arrest and detention. Plaintiff generally alleges that Defendant Warren acted with deliberate indifference to Plaintiff's constitutional rights, causing Plaintiff to suffer various physical injuries. Defendant Warren is sued in his individual capacity.

On September 15, 2015, Chief U.S. District Judge W. Keith Watkins consolidated Plaintiff's lawsuits, and ordered that the Lead Case shall be Civil Action No. 3:15-cv-43-WKW-PWG. (Lead Case, Doc. 29). With respect to his complaint against Defendant Warren, Plaintiff seeks to state a federal claim of deliberate indifference, pursuant to the Fourteenth Amendment, by and through the remedial vehicle of 42 U.S.C. § 1983. Before the court is Defendant Warren's motion to dismiss the Complaint. (Lead Case, Doc. 31). For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that Defendant Warren's motion to dismiss is due to be **DENIED**.

## I.   JURISDICTION

Subject matter jurisdiction over Plaintiff's federal claims is conferred by 28 U.S.C. § 1331.  The parties do not dispute venue or personal jurisdiction, and there are adequate allegations in Plaintiff's complaint against Defendant Warren to support both.  On September 15, 2015, this matter was referred to the undersigned by Chief U.S. District Judge W. Keith Watkins for disposition or recommendation on all pretrial matters.  *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.   PLAINTIFF'S CLAIM

Pursuant to the Fourteenth Amendment, Plaintiff brings a claim of deliberate indifference against Defendant Warren in his supervisory capacity.

## III.   BACKGROUND AND FACTS[1]

At all relevant times, Defendant Warren was the Sheriff for Macon County, Alabama.  (Second Case, Doc. 1 at ¶ 5).  As sheriff, Defendant Warren had the legal custody and charge of the Macon County Detention Center ('MCDC') and all prisoners and detainees within the MCDC.  (*Id.*).  Defendant Warren "employed,

---

[1] These are the facts for purposes of ruling on the pending motion to dismiss.  They are gleaned from the allegations in Plaintiff's complaint against Defendant Warren.

3

directed and controlled criminal investigators, correctional officers and other employees of the Macon County Sheriff's Office," including Defendants McCray, Johnson, and Scroggins.

In July 2013, Plaintiff worked as a licensed door-to-door salesman who sold alarm systems for Vivant Security Systems ("Vivant"). (*Id.* at ¶ 6). On July 4, 2013, at approximately 10:30 a.m., Plaintiff knocked on the door of Defendant McCray, an off-duty Macon County Criminal Investigator, to make a presentation regarding an alarm system. (*Id.*). When McCray opened his door, Plaintiff identified himself as a salesman for Vivant. (*Id.* at ¶ 7). McCray informed Plaintiff he was not interested in buying an alarm system but asked Plaintiff for a business card. (*Id.*). When Plaintiff responded he did not have a business card, McCray retrieved a piece of paper, and Plaintiff wrote down his information on the card. (*Id.*).

After this exchange, Plaintiff walked back to the street to determine where he would proceed to next. (*Id.* at ¶ 8). McCray called Plaintiff back to the house, and when Plaintiff returned, McCray put a handgun to Plaintiff's chest and demanded to see Plaintiff's identification. (*Id.*). "As McCray continued to press the gun to Plaintiff's chest and scream at Plaintiff about who McCray was," Plaintiff gave McCray his State of Alabama solicitor's license and his City of Tuskegee business license. (*Id.*).

4

Despite being shown two licenses, McCray forced Plaintiff to lay face down on the ground with his hands behind his back. (*Id.* at ¶ 9). Using his knee, McCray pressed Plaintiff against the concrete and placed Plaintiff's hands in handcuffs behind his back. (*Id.*). McCray then proceeded to pick Plaintiff up off the ground and loaded him into the back seat of his unmarked patrol car. (*Id.*). McCray ignored questions from Plaintiff who persistently asked why he was being detained. (*Id.* at 10). Instead of responding to these questions, McCray yelled and cursed at Plaintiff, telling Plaintiff he had knocked on the wrong door and that Plaintiff's life was over. (*Id.*).

When the two men arrived at the MCDC, McCray sat Plaintiff on a bench in the booking area and instructed him not to talk. (*Id.* at ¶ 11). As Plaintiff was seated on the bench in the booking area, his hands were still handcuffed behind his back. (*Id.*). Defendants Johnson and Scroggins, both MCDC correctional officers and under the supervision of Defendant Warren, were present when McCray brought Plaintiff into the MCDC. (*Id.* at ¶ 12).

In the presence of both Johnson and Scroggins and while Plaintiff was handcuffed and sitting on the bench in the booking area, McCray began to brutally assault Plaintiff. (*Id.* at ¶ 13). After striking Plaintiff across the right side of the face, McCray knocked off Plaintiff's hat and continued to hit Plaintiff's head, neck, and

face. (*Id.*). When Plaintiff attempted to duck his head to avoid McCray's blows, McCray lifted Plaintiff's chin with one hand and struck Plaintiff again with the other hand. (*Id.*). McCray continued to batter Plaintiff in the presence of Johnson and Scroggins. (*Id.*). Johnson and Scroggins did nothing to stop the beating despite having ample opportunity to intervene on Plaintiff's behalf. (*Id.* at ¶¶ 13, 15).

After McCray had left the booking area, Plaintiff asked Johnson and Scroggins why he was being detained. (*Id.* at ¶ 16). Plaintiff was informed "that it was McCray's call." (*Id.*). McCray returned to the booking area and led Plaintiff into a conference room. (*Id.* at ¶ 17). While in the conference room, McCray said to the Plaintiff, "You're not going to sue me, right?" (*Id.*). McCray told the Plaintiff that Plaintiff had to sign a piece of paper to avoid being charged with trespassing. (*Id.*). McCray then pulled a pre-printed non-prosecution release form a briefcase. (*Id.*). Macon County Sheriff Department non-prosecution forms were readily available to employees of the Macon County Sheriff's Office and were made a part of an arrestee's or detainee's records upon execution. (*Id.* at ¶ 24).

After he filled out the non-prosecution form, McCray gave the form to Plaintiff to sign. (*Id.* at ¶ 17). The form stated, in part, "I, Landon Williams, hereby affirm that I have been advised that I have grounds to file a complaint against J. Keith McCray for Criminal Trespassing in the First Degree This 4th day July 2013." (*Id.*).

Fearing any potential repercussions if he refused to sign, Plaintiff signed the form and a Macon County Dispatcher, T'la Motley, signed the same form as a witness." (*Id.*). After Plaintiff signed the form, McCray told him he had signed the wrong form. (*Id.* at ¶ 18). McCray then went out to the dispatch area where he instructed Motley to fill out another release form for Plaintiff to sign. (*Id.*). McCray then told Plaintiff to sign the new form, which replaced "Criminal Trespassing in the First Degree" with "Assault." (*Id.*).

Although Defendant Warren learned of the incident after it took place, Defendant Warren was aware that a camera inside the booking area at the MCDC captured on videotape the events involving Plaintiff. (*Id.* at ¶¶ 19-20). According to the complaint, Defendant Warren could discern from viewing this recording that McCray had savagely beaten Plaintiff, who had been restrained and compliant. (*Id.* at ¶ 21). Defendant Warren also could view on the videotape that Johnson and Scroggins had the opportunity to intervene and protect Plaintiff, but failed to do so. (*Id.*). Despite clear evidence of the improper and unconstitutional actions of McCray, Johnson, and Scroggins, Defendant Warren did not discipline his subordinates and failed either to initiate training or provide notice to other employees of the Macon County Sheriff's Office that such conduct was unacceptable. (*Id.* at ¶¶ 22-23).

Plaintiff filed his first lawsuit against Defendants McCray, Johnson, and Scroggins. (Lead Case, Doc. 1). Plaintiff claims that McCray illegally arrested and detained him, that McCray used constitutionally excessive force during the arrest and detention, and that Johnson and Scroggins failed to intervene and protect him from the excessive use of force. (*Id.* at pp. 7-9). On November 13, 2013, McCray was indicted in this court in connection with the incident occurring on July 4, 2013, and charged with: (1) two counts of willfully depriving Plaintiff of his civil rights (Counts 1 and 2); and (3) witness tampering (Count 3). (*United States v. McCray*, Criminal Action No. 3:13-cr-285-MHT-SRW-1, Doc. 1). Pursuant to a plea agreement, McCray pled guilty to Count 2 of the indictment in exchange for the dismissal of the other two counts. (*Id.*, Doc. 49). The Honorable Myron H. Thompson sentenced McCray to three years in prison. (*Id.*).

## IV.   MOTION TO DISMISS STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th

Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.  While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## V.   DISCUSSION

### A.   Plaintiff's Claim

Plaintiff claims that Defendant Warren acted with deliberate indifference to a substantial risk of serious harm toward Plaintiff by creating, disseminating, authorizing, and allowing employees of the Macon County Sheriff's Office non-prosecution forms which Plaintiff signed under coercion and duress. (Doc. 1 at ¶¶ 26, 30). Plaintiff asserts that by creating, disseminating, authorizing, allowing, and

ratifying the use of a non-prosecution release form after a detainee, arrestee, or prisoner had been a victim of a constitutional deprivation or other misconduct, Defendant Warren adopted a custom or policy that deprived persons such as Plaintiff of their constitutional rights.  (*Id.* at ¶ 27).  The custom or policy authorized by Defendant Warren caused the employees under his control to believe that excessive force, obstruction, and other forms of misconduct would be tolerated.  (*Id.*).

Defendant Warren asserts in his motion to dismiss that he is entitled to qualified immunity with respect to Plaintiff's deliberate indifference claim because the complaint fails to allege a plausible supervisory liability claim against him and fails to show a violation of clearly established law.  (Doc. 32 at pp. 1-2).  Defendant argues that: (1) Plaintiff alleges no facts to show a history of widespread abuse; (2) Plaintiff has failed to point out a policy that actually caused harm to him; (3) there are no allegations that Defendant Warren directed any of his subordinates to act unlawfully or knew that they would act unlawfully and failed to stop them; (4) the complaint fails to allege a plausible claim with respect to allegations basing supervisory liability on a failure to train; and (5) Plaintiff cannot show a violation of clearly established law against Defendant Warren regarding the use of non-prosecution release forms.  (*Id.* at pp. 11-14).

11

Plaintiff responds that he has sufficiently pled a deliberate claim against Defendant Warren based on his supervisory status because the allegations in his complaint show that Defendant Warren imposed an improper custom or policy that constituted deliberate indifference to his constitutional rights.  (Doc. 33 at pp. 12-14.).  Plaintiff further contends that his allegations of inadequate training support an actionable § 1983 claim as they indicate Defendant Warren employed, directed, and controlled the other three individual employees of the Macon County Sheriff's Office.  (*Id.* at 17).  Lastly, Plaintiff contends that "the law was ... clearly established to put a reasonable sheriff on notice that release-dismissal agreements as utilized by his employees was unconstitutional."  (*Id.* at p. 21).

## B.   Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lawrence v. City of Fairhope, Ala.*, 429 F.App'x 900, 902 (11th Cir. 2011) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting in turn *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Supreme Court has held that the doctrine of "[q]ualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity protects public officials from broad-ranging discovery disruptive to effective government, *see Harlow*, 457 U.S. at 818, and operates as a shield against civil damages due to mistaken judgments. *See Malley v. Briggs*, 475 U.S. 335, 343 (1986); *Butz v. Economou*, 438 U.S. 478, 507 (1978) ("[Public] officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law."). Qualified immunity is "an immunity from suit rather than a mere defense to liability...." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). Indeed, the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2 (1987).

With the foregoing principles in mind, qualified immunity involves a two-step inquiry. First, "the official has the burden of establishing that he was acting 'within the scope of his discretional authority." *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)). Should Defendant Warren satisfy this burden, the burden then shifts to Plaintiff to demonstrate that (1) Defendant Warren violated a constitutional right and (2) the right

13

was clearly established when Defendant Warren acted.  *See Pearson*, 555 U.S. at 236; *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).

Defendant Warren contends that he was acting within the scope of his discretionary authority due to the facts he was carrying out his statutory duties.  (Doc. 32 at p. 9).  Plaintiff does not challenge this contention.  Accordingly, for purposes of this motion to dismiss, Defendant Warren has satisfied his burden.  To proceed forward in this case, Plaintiff must allege sufficient facts to state a violation of a constitutional right and show that the right was clearly established at the time of Defendant Warren's actions.

To recover on a § 1983 claim, a plaintiff must demonstrate a violation of a federal right.  *Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 n. 3 (11th Cir.1995).  "It is well settled that "[a] prison officials deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Id.* at 1582.  Plaintiff was not a convicted inmate at the time the incident occurred when he was taken into custody by McCray.  The Due Process Clause of the Fourteenth Amendment prohibits prison officials from acting deliberately indifferent to a known, substantial risk of serious harm to pretrial arrestees or detainees.  *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir. 2013) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1358 (11th Cir.2003)).  Although Plaintiff's rights are governed by the Fourteenth Amendment,

"[t]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001). *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (recognizing that, while "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause," the applicable standard is the same as claims against convicted prisoners under the Eighth Amendment).

To state a cognizable claim of deliberate indifference against Defendant Warren, Plaintiff must allege: (1) a substantial risk of serious harm; (2) Defendant Warren's deliberate indifference to that risk; and (3) causation. *Goodman*, 718 F.3d at 1331. "To be deliberately indifferent, a prison official must know of and disregard 'an excessive risk to inmate health or safety; [that is,] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Purcell v. Toombs County*, 400 F.3d 1313, 1319 (11th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Generally, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone,* 326 F.3d 1352 at 1360 (quoting *Hartley v. Parnell,* 193

F.3d 1263, 1269 (11th Cir.1999)).  Supervisory liability under § 1983 only attaches "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is causal connection between the actions of the supervising official and the alleged constitutional deprivation."  Id.  A "causal connection" for purposes of supervisory § 1983 liability may be established in three ways:

> A causal connection may be established when: (1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).

Plaintiff's deliberate indifference claim against Defendant focuses on the use of the non-prosecution release agreement signed by him.  Before addressing whether Plaintiff has stated a plausible § 1983 claim against Defendant Warren based on his supervisory status, it is important to analyze whether these types of release agreements are permissible in the first place.   Generally, a release-dismissal agreement is a contract in which an individual who is or imminently will be charged with a crime enters into an agreement with the government whereby all criminal charges against the individual are dismissed and the individual, in turn, releases the government and its employees or agencies from civil liability.  *See Town of Newton*

16

*v. Rumery*, 480 U.S. 386 (1987); *Penn v. City of Montgomery, Alabama*, 273 F. Supp. 2d 1229 (M.D. Ala. 2003), *aff'd Penn v. City of Montgomery, Alabama*, 381 F.3d 1059 (11th Cir. 2004).

In *Rumery*, the Supreme Court examined the enforceability of a release-dismissal agreement in which a criminal defendant releases claims under § 1983 in exchange for the dismissal of pending criminal charges. *Rumery*, 480 U.S. at 390-91. After being arrested and charged with witness tampering, Rumery's counsel drafted the release-dismissal agreement, negotiated the deal with the prosecutor, and obtained Rumery's signature on the agreement three days after he was presented with the agreement. *Id.* In a plurality decision, the Supreme Court held that release-dismissal agreements are not *per se* invalid, but the Court cautioned that such agreements should be scrutinized on a "case by case" basis. *Id.* at 392-94. The Court further explained that a release-dismissal agreement is valid if the defendant entered into it voluntarily, without prosecutorial misconduct, and as long as the agreement does not adversely affect the public interest. *Id.* at 398.

Subsequently, in *Vallone v. Lee*, 7 F.3d 196 (11th Cir. 1993), the Eleventh Circuit Court of Appeals considered *Rumery* when determining whether the trial court's jury instructions on the voluntariness of the release-dismissal agreement at issue. *Id.* at 198. In that case, Michael Vallone was a jail detainee who had sought

bail for several months. *Id.* at 197-98. Vallone's court-appointed attorney, Leonard Queen, presented him with a release agreement prepared by the prosecutor which Vallone initially refused to sign. *Id.* at 198. According to Vallone's testimony at trial, Douglas County Sheriff Earl Lee ordered him to sign the release agreement. *Id.* Vallone eventually signed the agreement in which he agreed to release Sheriff from "all claims, demands, and liabilities" in exchange for release from jail. *Id.*

The trial court in *Vallone* instructed the jury with two theories of liability: (1) Lee violated Vallone's due process rights by inhibiting his access to bail; and (2) Lee violated Vallone's right to access the court through a court-appointed attorney. *Id.* at 198. The trial court further instructed the jury to determine the validity of the release agreement. *Id.* The Eleventh Circuit concluded that:

> *Rumery* . . . does not control the instant case. *Rumery* involved an informed and uncoerced decision by a criminal defendant to forego civil litigation in exchange for the dismissal of charges pending against him. Consequently, the Court focused on Rumery's public policy objections to release-dismissal agreements. In the instant case, however, Vallone presented evidence that not only had he been coerced into signing the agreement, but also that the coercion stemmed from the threat of continuing and unjustified incarceration pending his trial.
>
> In its final jury charge, the district court properly advised the jury that "the defendant must prove . . . that . . . the plaintiff executed the agreement voluntarily, knowingly, and free of duress." The court also charged the jury that "if the true exchange for the signing of the release was to permit Mr. Vallone to get out of jail, and if Mr. Vallone were otherwise entitled to get out of jail, then the signing of the release would not be voluntary." Here, the court properly stated that if Vallone was

18

otherwise entitled to be released on bail – though Lee had blocked his release – then, by signing the agreement to secure his freedom, Vallone did not voluntarily relinquish his right to seek redress against Lee in a subsequent civil suit. *See Hall v. Ochs*, 817 F.2d 920, 923 (1st Cir. 1987) (In such circumstances, even if probable cause supports the charges, "confining [a criminal defendant] solely because he want[s] to exercise his right to seek civil redress violate[s] his right to liberty."). While not a complete exposition of *Rumery's* test, the instruction, taken as a whole and within the context of the evidence presented at trial, did not tend to confuse or mislead the jury.

*Id.* at 198-99.

The decisions in *Rumery* and *Vallone*, when read together, indicate that a release-dismissal agreement shall be deemed invalid in situations where an arrestee or detainee is coerced into signing one in order to avoid continued detention or incarceration. *See Rumery*, 480 U.S. at 400 ("The coercive power of criminal process may be twisted to serve the end of suppressing complaints against official abuse, to the detriment not only of the victim but also of society as a whole.") (O'Connor, J. concurring).  Plaintiff's allegations reflect a situation where: (1) McCray lacked probable cause to arrest Plaintiff; (2) Plaintiff was nevertheless taken into custody and brutally beaten by McCray; and (3) Plaintiff was coerced into signing a release agreement in order to gain his freedom.

With these principles in mind regarding release-dismissal agreements, Plaintiff asserts that Defendant Warren established or ratified a custom or policy that authorized his employees to obtain non-prosecution release forms from detainees like

Plaintiff, whose constitutional rights have been violated. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Goebert v. Lee County*, 510 F.3d 1312, 1331-32 (11th Cir. 2007). "A custom is an unwritten practice that is applied consistently enough to have the same effect as policy with the force of law." *Id.* "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" *McDowell v. Brown*, 392 F.3d 1283, 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)).

Plaintiff further asserts that Defendant Warren's inadequate training and supervision of his employees also serves as a basis for his deliberate indifference claim. (Second Case, Doc. 1 at ¶ 23); Doc. 33 at p. 17-18). The failure to train employees may serve as an actionable policy or custom against a supervisory official, but "'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [subordinate officials] come into contact.'" *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

To state a claim of failure to train or supervise, a plaintiff must allege that the supervisor has a policy of failing to train or supervise employees adequately and that this policy causes the employees to violate the plaintiff's constitutional rights. *See*

20

*Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  A failure to train amounts to deliberate indifference when "the need for more or different training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right."  *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397-98 (11th Cir. 1994).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotations omitted). However, "a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations . . . in a narrow range of circumstances [in which a plaintiff shows that] a violation of federal rights may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations." *Board of County Cm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997) (citing *City of Canton v. Harris*, 489 U.S. at 390 and n.10). "The narrow range of circumstances that would support a finding that inadequate training "reflected deliberate indifference" include cases in which a plaintiff shows a 'likelihood that the situation will recur' and 'predictability that an employee lacking specific tools to handle that situation will violate citizens' rights.'" *Jackson v. City*

*of Centreville*, 899 F. Supp. 2d 1209, 1220 (N.D. Ala. 2012).  Thus, in the absence of showing a pattern of similar constitutional violations, the violation of a citizen's rights must be an obvious consequence of the failure to train.  *See Connick*, 563 U.S. at 1360-61.

Defendant contends that Plaintiff's allegations only reference an isolated, single incident, which "cannot raise the purported policy at issue to the level of deliberate indifference." (Doc. 32 at 11).  Defendant Warren further argues that Plaintiff's complaint "is absent any factual allegations regarding any other occurrences of similar incidences involving Sheriff Warren's personnel." (*Id.* at 13). Indeed, Plaintiff has not detailed specific instances in his complaint of previous occurrences where employees supervised by Defendant Warren violated the constitutional rights of arrestees or detainees through the use of non-prosecution release forms.

Plaintiff's allegations, however, reflect that pre-printed non-prosecution release forms were readily available to McCray and other employees of Defendant Warren and were generally made a part of an arrestee's or detainee's records upon release. (Second Case, Doc. 1 at ¶¶ 17-18, 24).  Plaintiff's complaint also states generally that Defendant Warren allowed his employees to violate the constitutional rights of arrestees or detainees without fear of reprisal through the regular use of non-

prosecution release forms.   (*Id.* at ¶¶ 24-25).   Plaintiff's complaint indicates, therefore, that the use of non-prosecution release forms against either arrestees or detainees was a persistent and wide-spread practice within the Macon County Sheriff's Office.   Thus, when viewing the allegations in the complaint as true, Plaintiff has alleged enough to state a plausible deliberate indifference claim against Defendant Warren based on his supervisory status.   At this stage in the proceedings, Plaintiff has alleged sufficient facts of a causal connection between the custom established by Defendant Warren regarding the use of non-prosecution release forms and the violation of Plaintiff's constitutional rights by his subordinate employees.

Due to his employees' access and use of the non-prosecution release forms, Plaintiff's allegations suggest that Defendant Warren's inadequate training and lack of supervision led to circumstances where the violation of citizens' constitutional rights occurred in the past and will likely occur in the future.   When viewing the allegations in the complaint as true, Plaintiff has alleged enough to state a plausible claim against Defendant Warren based on his supervisory status in that the violation of Plaintiff's constitutional rights, through the actions of his subordinates, may be an obvious consequence of the failure to train.   *See Connick*, 563 U.S. at 1360-61; *Brown*, 520 U.S. at 409.   Further factual development of these issues will allow the parties to explore additional instances where employees of the Macon County

Sheriff's Office may have utilized the forms readily available to them in the office as well as the training provided by Defendant Warren to his employees.[2]

Because Plaintiff's allegations state a claim that Defendant Warren violated his constitutional rights, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). This requirement ensures that officials have fair notice of the unconstitutional conduct which is prescribed. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "A plaintiff need not show that the officer's conduct specifically has been held unlawful," but only that the officer would have "fair warning that [his] conduct was unconstitutional," on the basis of "sufficiently clear" law. *Bates v. Harvey*, 518 F.3d 1233, 1247-48 (11th Cir. 2008) (citing *Hope*, 536 U.S. at 741). Furthermore, there is a temporal requirement related to this inquiry—a plaintiff must show that a reasonable public officer would not have believed his actions to be lawful in light of law that was clearly established at the time of the purported violation. *See Creighton*, 483 U.S. at 641; *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

---

[2] As discussed above, the defense of qualified immunity protects defendants from burdensome discovery. Nevertheless, in law enforcement actions like the case at bar, "the need for discovery of matters peculiarly within the knowledge of the defendants outweighs the burden of discovery, particularly when subsequent motions for summary judgment will be available to the defendants to test the issue of qualified immunity post-discovery." *Martinez v. McCord*, No. 1:06-CV-636-WKW, 2008 WL 2003789, at *6 n.9 (M.D. Ala. May 8, 2008).

As discussed above, a fair reading of *Rumery* and *Vallone* reflects that release-dismissal agreements shall be deemed invalid in situations where an arrestee or detainee is coerced into signing one in order to avoid continued detention or incarceration. *See Rumery*, 480 U.S. at 400; *Vallone*, 7 F.3d at 198-99. The facts alleged by Plaintiff, when accepted as true, indicate that: (1) he was subjected to an illegal arrest, illegal detention, and excessive force while in custody; and (2) McCray coerced Plaintiff into signing a non-prosecution agreement waiving claims for violations of his constitutional rights in order to gain his freedom. (Lead Case, Doc. 1 at ¶¶ 7-19; Second Case, Doc. 1 at ¶¶ 7-19). Defendant Warren and his subordinate employee, McCray, should have known that the use of a non-prosecution form in such a coercive manner against Plaintiff would violate Plaintiff's constitutional rights. *See United States v. Lanier*, 520 U.S. 259, 269 (1997) (explaining that a case does not have to be factually identical to give "reasonable warning that the conduct then at issue violated constitutional rights").

Defendant Warren's knowledge of such an impermissible use of the non-prosecution release forms suggests that he could not reasonably conclude that his actions, in establishing a custom in utilizing the forms or in failing to train adequately his employees, did not constitute deliberate indifference to Plaintiff's rights. *See Romero v. City of Clanton*, 220 F. Supp. 2d 1313, 1321 (M.D. Ala. 2002). When

viewing the allegations of the complaint as true, Plaintiff has made sufficient allegations in the complaint to state that Defendant Warren violated a constitutional right of Plaintiff that was established at the time of the alleged violation of which a reasonable person would have known.  Further factual development of these issues may demonstrate that Defendant Warren is entitled to qualified immunity. Nevertheless, Defendant Warren's motion to dismiss is denied at this time without prejudice to renewal in connection with a summary judgment motion.

## VI.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that the Defendant Warren's motion to dismiss (Lead Case, Doc. 31) be **DENIED in its entirety**.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **March 22, 2016.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by

the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this the 8th day of March, 2016.

/s/ Paul W. Greene
United States Magistrate Judge

27